RED RIVER VALLEY BANK, Plaintiff and Appellant, *v.* GEORGE
R. FREEMAN, Defendant and Respondent.

1. **Assignments for Benefit of Creditors — Reservation of
Exemptions.**

   Under the statute regulating assignments for the benefit of creditors,
   defendant in due form made a voluntary assignment of all of his prop-
   erty for the benefit of his creditors, "except such property only as is
   exempt by law from attachment and execution, as provided by sections
   323, 324 and 325 of the Code of Civil Procedure." In proper time de-
   fendant filed a duly-verified inventory, showing a schedule of his prop-
   erty claimed by him as absolutely exempt under section 323, id.; also a
   schedule of his personal property, valued at $1,499.77, claimed as addi-
   tional exemptions under section 324, id.; and a final schedule of all of his
   property not claimed as exempt property. *Held*, that such assignment
   was not *prima facie* fraudulent in law, under section 2023 of the Civil
   Code; nor void on its face, as against non-assenting creditors, under
   subdivision 3, § 2030, id.

**2. Same; Same; Debtor Entitled to "Additional Exemptions."**

*Held, further,* that a debtor making such assignment, who claims additional exemption of personal property to an amount not exceeding $1,500 in value, is entitled to such exemptions; and, when the debtor's duly-verified inventory embraces a schedule of such additional exemptions, that such inventory and schedule, in the absence of fraud, is sufficient, *prima facie,* as a claim by the debtor of such additional exemptions.

**3. Same; Duty of Assignee.**

*Held, further,* that, under the statute regulating such assignments all property not exempt from execution passes to the assignee, and that it becomes his duty, as assignee, to follow and take into his possession all of the debtor's non-exempt property, not voluntarily turned over to him by the assignor. Such voluntary assignment creates a trust, and district courts, sitting as courts of equity, have, under the statute, and by virtue of their inherent powers, jurisdiction over the subject-matter of the trust; and such courts will, on proper application, put forth their equity powers to aid the administration of the trust.

**4. Same; Reservation of Exemptions not Ground for Attachment.**

*Held, further,* that, in the absence of actual fraud, attachment will not lie against an assignor, for the sole reason that in making an assignment for the benefit of creditors he reserves all his property "exempt from execution."

**5. Appealable Order.**

An order vacating an attachment is an appealable order.

(Opinion Filed June 3, 1890.)

*A*PPEAL from district court, Cass county; Hon. WILLIAM B. McCONNELL, Judge.

Appeal from an order vacating an attachment.

Messrs. Francis & Southard and Stone, Newman & Resser, for the appellant: The property excepted and reserved from assignment was not exempt and rendered the assignment void: Comp Laws, §§ 4663, 4667, Art. 2, Chap. 13. The statutes allowing exemptions do not apply to cases of voluntary assignment. The assignment being void and fraudulent in law, furnishes ground for attachments: Noble v. Holmes, 5 Hill, 194; Van Etten v. Hurst, 6 id. 311; Thurber v. Blank, 50 N. Y. 80; Richardson v. Rogers, 45 Mich. 591; Comp. Laws, § 4995.

Messrs. B. F. Spaulding and A. C. Davis for respondent: The exemption laws should be liberally construed, and the assignment law failing to make provision for selection of exemptions the court will devise a mode. The assignment was valid: Cribben v. Ellis, 34 N. W. 154; Perry v. Vezina, 18 id. 657; Hildebrand v. Bowman, 100 Pa. St. 580; Richardson v. Marquese, 42 Am. Rep. 353; Derby v. Weyrick, 30 id. 827; Bank v. Peterson, 35 N. W. 47; Muhr v. Pinover, 10 Atl. Rep. 289; Severson v. Porter, 40 N. W. 577; Burrill on Assignments, (4th Ed.) 137–40.

WALLIN, J.   On the 11th day of March, 1890, defendant, under the statute regulating assignments, made a general assignment for the benefit of his creditors, and made, executed, and delivered to one Edward R. Sherburne, as his assignee, a written instrument of assignment in due form, in which instrument said Sherburne joined. On the same day the said instrument was duly filed and recorded. The writing purported to convey, and did convey, to the assignee all of the assignor's property, real and personal, in trust for his creditors, without any preference or reservation whatever, "except such property only as is exempt by law from attachment and execution, as provided by sections 323, 324, and 325 of the Code of Civil Procedure." Within the time limited by statute, the defendant duly filed an inventory of his property, embracing a schedule of the property which was conveyed in trust to the assignee; also a schedule of certain property claimed and conceded to be absolutely exempt by statute from seizure and sale on legal process; and a final schedule of other personal property of the defendant, which was itemized and valued by him at the sum of $1,499.77, which last-mentioned property was not assigned, but was reserved and claimed by defendant as exempt property, under the statute exempting additional personal property to an amount not exceeding $1,500 in value. To the inventory was added an affidavit made by the defendant, stating "that said inventory and schedules are in all respects just and true, according to the best of his knowledge and belief." The assignee qualified in due time and took possession of the property conveyed to him in trust. On March 29, 1890, all the property in question, except

that absolutely exempt, was seized by the sheriff of Cass county under a warrant of attachment issued at the instance of the plaintiff. The only ground of the attachment is stated in the affidavit as follows: "And that said defendant has assigned and disposed of his property with the intent to defraud his creditors." On April 1, 1890, the defendant, joining with the assignee, moved in the district court to vacate said attachment. The motion was granted, and said court, on the same day, by its order, directed the sheriff to release the property. An exception was allowed to the order vacating the attachment, and the order is assigned as error in this court. Upon the hearing of the motion to vacate the attachment, counsel filed a stipulation, embracing the agreed facts upon which the motion was heard and determined. The stipulation contained a narrative of the principal features of defendant's assignment for the benefit of his creditors.

The facts concerning the same are not controverted, and have already been stated in substance. It is admitted that the assignment proceeding furnishes the only foundation for the attachment. Plaintiff's counsel have not claimed that the record contains any evidence whatever of a fraudulent intent, or actual fraud, on defendant's part in making his assignment. Nor is it claimed that the defendant or the assignee has omitted any act or formality required by the statute regulating such assignments. Plaintiff's only claim and contention is that the assignment is made void in law and upon its face, because it in terms reserves to the debtor's use a portion of his property before the debts are paid, viz., personal property of the value of $1,499.77, which the defendant schedules and reserves in his inventory as exempt under the statute awarding additional exemptions to the amount of $1,500. In support of this claim, plaintiff cites subdivision 3, § 4663, Comp. Laws; § 4656, id. In other words, plaintiff's position is that, where an insolvent debtor makes a voluntary assignment for the benefit of his creditors, under the statute providing for such assignments, he is not entitled to the additional exemptions secured by statute to an execution or attachment debtor. Plaintiff's counsel relies upon the statutes regulating exemptions in favor of the debtor where his property is

seized under legal process, and calls attention to the fact that in such cases the debtor is required to take certain steps prescribed by statute in order to secure his exemptions. Under the statute such debtor must list all of his property under oath, and it must be appraised by a board of three appraisers, and then the exemptions must be selected by the debtor. And counsel argue that inasmuch as the machinery for securing exemptions to an execution or attachment debtor is wholly wanting in the statute providing for voluntary assignments, it necessarily follows that the exemptions themselves do not exist in such cases.

We think the position taken by counsel is untenable. To sustain such a view of the law would involve an extremely harsh, as well as very narrow, construction of a statute which in its essential characteristics is highly beneficial, and one which has uniformly received a liberal construction at the hands of the courts. It is true that the statutes providing for voluntary assignments for the benefit of creditors does not itself attempt to grant to debtors specific exemptions; but, on the contrary, the statute everywhere takes for granted and assumes that certain of the debtor's property is already exempt, and beyond the reach of any creditor, by force or other statutes. But the statute regulating assignments repeatedly makes reference to the debtor's exemptions, and carefully guards such exemptions. "Property exempt from execution" does not "pass to the assignee" where the instrument of assignment is silent concerning the same; much less, therefore will such property pass where it is expressly reserved in the instrument. Comp. Laws, § 4677.

Section 5128, id., embraces a clear expression of the legislative will to the effect that debtors shall not be stripped of all their property, but at their election may hold, in addition to absolute exemptions, $1,500 worth of personal property as against creditors. The ordinary mode whereby the creditor lays hands on the property of the debtor is by attachment or execution, and in cases of such seizures of the debtor's effects the legislature has been careful to guard and hedge about the debtor's exempt property in such a way that it will be secured to him and his family. In cases of voluntary assignments, no

such scrupulous care has been evinced. It was not anticipated by the law-makers that, in a case where the debtor without fraud voluntarily turns over to his creditors, for equal division among them all of his property, reserving only such property as the law has placed beyond the reach of creditors, many safeguards were necessary to protect exemptions, and hence but few were provided. But the assignment law not only recognizes the debtor's right to reserve property assumed to be exempt from execution, (subdivision 3, § 4663, id.,) but goes further, and requires the assignor to embrace in a sworn inventory a list of all the assignor's property which was exempt at the date of the assignment, (subdivision 6. § 4667, id) This presents a mode, though an incomplete one, whereby an insolvent debtor may, under the statute, indicate and select an amount of property which he claims to be beyond the reach of creditors as exempt property. It is true that such mode of selecting the debtor's exemptions is *ex parte*, and could not prevail in a case where it appeared, upon proper investigation, that the selection so made was fraudulent or without warrant of law. But, inasmuch as such selections are made under the terms of the assignment statute, the courts will not regard them as *prima facie* illegal. What the statute expressly directs debtor to do, cannot, when done, constitute a legal fraud.

The same question presented in this case has been passed upon by the courts of many of the states, and we have found no modern case going to the length claimed by plaintiff's counsel. In Wisconsin it is ruled, in a similar case; that, "if more was retained than allowed by the statutes, the excess could be recovered by the assignee under direction of the court." Severson v. Porter, 40 N. W. Rep. 577. Again, in the same state, where it is held that a firm, as such, is not entitled to any exemptions, a certain firm made an assigment of all its property for the benefit of its creditors, "except such as may be exempt from seizure on attachment or execution by the laws of the state of Wisconsin." It was held that such exemption was inoperative,—"all the property of the firm passed to the assignee,"—and such a reservation did not operate to render the assignment void. Bank v. Hinman, 21 N. W. Rep. 280, citing other Wisconsin cases. The same doctrine

is announced in Nebraska. Lininger v. Raymond, 9 Neb. 40, 2 N. W. Rep. 359.

Applying the principles of the cases last referred to—as we should do in a proper case—it would not follow that a debtor who, in making a voluntary assignment for the benefit of his creditors without fraud, reserved property as exempt to which he was not entitled, would thereby defeat and invalidate the assignment. In the Nebraska case the court say: "Under the statute the entire proceedings are under the supervision and control of the district court, or the judge thereof, and it is the duty of the court or judge, upon proper application to see that the assignee properly discharges the duties of his trust." This language can be adopted by us, and will be equally appropriate when used in the case at bar. Section 4675, Comp. Laws, declares that "all proceedings under this title shall be subject to the order and supervision of the judge of the district court of the county in which such assignment was made." The statute devolves upon the judge of the district court duties and powers which can only be put forth by a court of chancery, and hence the statute would be construed to mean the district court, as well as the judge thereof, whenever such construction became necessary to administer a trust, and carry out the objects of the statute. Under the statute, and in virtue of the inherent powers of the district court as a court of equity, that tribunal would readily find all proper and necessary machinery requisite to administer the trust created by an assignment for the benefit of creditors. It could readily find the means and agencies necessary to protect the interests of creditors, and also those of the debtor. If it should appear in any case that a debtor had not turned over to his assignee "all property not exempt from execution," the court, on proper application therefor, would, under the authorities, find appropriate means of reaching such property if within the jurisdiction of the court. And if it became necessary to do so, a court of equity would devise the means and agencies necessary to separate, identify, and turn over to the debtor any exemptions which a debtor might elect to reserve, not exceeding in amount his legal exemptions. In Brooks v. Nichols, 17 Mich. 38, the court

say: "The assignment passes for the benefit of creditors the same interest precisely which an officer would seize by virtue of execution, and there is no more difficulty in making the selection of exempt property in the one case than in the other." In Indiana, the statute regulating assignments required the assignor to turn over all of his property to the assignee, and the latter was required to have it all valued by appraisers, and, after the apprasal, the assignee was required to redeliver to the debtor as exempt property an amount not exceeding $300 in value. In a case under such statute, the debtor did not by his assignment turn over or assign all of his property, but held back certain effects, claiming them as exempt, and the court say: "A reservation in good faith, in an assignment by the assignor of 'so much property as may be exempt from execution,' will not avoid the deed." Garnor v. Frederick, 18 Ind. 507.

We quote with approval the language of an early Michigan case, Hollister v. Loud, 2 Mich. 310: "Another ground of objection is that the assignors reserved from the general mass of the property such of it as was by law exempt from levy and sale on execution. This question has been raised under the statute of 13 Eliz. It is the settled law in England that, to make a voluntary conveyance void as to creditors, it must embrace property subject to be taken on execution for the payment of debts. It is held there (as it must be here) that the statute was not intended to enlarge the remedies of creditors. That would be a strange anomaly (says Judge Story in 1 Eq. Jur. § 367) to declare that to be a fraud upon creditors which in no respect varied their rights or remedies. We cannot perceive why this same doctrine should not apply as conclusively to a conveyance which withholds property from creditors which is not subject to execution, and which is expressly and in all contingencies saved to the debtor by statute law. As to the property which was for the time being withheld, and which was allowed to the assignors by the assignees, as being exempt by law, we say, if the property was not exempt, it, at the least, was assigned, and vested in the trustees. The assignees must settle that question with the assignors. The creditors will hold them responsible, if the property was not exempt. It was not done secretly; the parties

attempted to act under the law." So with, respect to this case, it may be observed that defendant assigned to the assignee all of his property "not exempt." This would empower the assignee to follow and take possession of any property belonging to the defendant not exempt from execution, and it would be his duty to so do.

Counsel for respondent cite, from Maryland court of appeals, Muhr v. Pinover, 10 Atl. Rep. 289. The case is on all fours with that under consideration, and the opinion forcibly expresses our own views of what the law of this case is and should be. The court say: "The debtor in this case, being in failing circumstances, made an assignment of all of his property, except so much thereof as is exempt by law from execution, for the benefit of his creditors; and the question is whether the reservation of property exempt from execution makes the assignment fraudulent and void as to creditors. If it does, it must be because such a reservation operates in some way to hinder, delay, or defraud the creditors of their just demands against the debtor. An assignor has no right, of course, to reserve any part of his property for the benefit of himself or of his family which, by any process at law or in equity, could be made liable for the payment of his debts. But when the law itself exempts certain property of the debtor from execution, property in regard to which the creditors can have no interest or concern, and which cannot be made subject to the payment of their demands, we do not see on what grounds the reservation of such property can be said to be in fraud of creditors. It certainly does not operate in any manner to delay, hinder, or defraud them of their rights, because it does not in any way interfere with their remedies, nor does it take from them any property of the assignor which could be sold for the payment of their claims.

This seems too plain for argument. To make such assignment void, there must be a reservation of property which could be made subject to the payment of the debts of the assignor; and with the exception of Sugg v. Tillman, 2 Swan, 208, and which was subsequently qualified by Farquharson v. McDonald, 2 Heisk. 404, the decisions in this country are uniform in regard to the question. Heckman v. Messinger, 49 Pa. St.

465; Mulford v. Shirk, 26, Pa. St. 473; Dow v. Platner, 16 N. Y. 562; Smith v. Mitchell, 12 Mich. 180; Brooks v. Nichols, 17 Mich. 38; Simpson v. Robert, 35 Ga. 180; Bank v. Cox, 6 Me. 395. But then it is said the act of 1861 exempts the property of the debtor only from sale under execution, and makes no provision for the exemption of property under an assignment for the benefit of creditors. This may be so, but the act of 1861 was passed in pursuance of the state constitution, which provides that 'laws shall be passed by the general assembly to protect from execution a reasonable amount of the property of the debtor, not exceeding in value the sum of five hundred dollars.' The object of the law was to prevent a debtor from being stripped of all his property, and it ought to be liberally construed. As his property could be taken and sold only by way of execution, it provided in terms for the exemption in such cases. By the terms of the act, the debtor may select property to the value of $100, to be ascertained by three appraisers to be summoned and sworn by the officer levying the execution. And if the property cannot be divided so as to set apart a portion of it, of the value of $100, without loss and injury to all parties concerned, then the property is to be sold, and the debtor is to be awarded $100 of the proceeds of sale. Now, an assignee for the benefit of creditors is in equity a trustee for all parties in interest; and, although the act of 1861 makes no provision by means of which the property exempt may be ascertained under a voluntary assignment, yet we see no reason why this may not be done under the supervision of a court of equity, on application of the assignee, or of any other party in interest. No provision is made by the act where the debtor applies for the benefit of the insolvent laws, and yet in such cases the exemption is made under the direction of the insolvent court. Construing the act of 1861 in connection with the provisions in the constitution, it is clear, we think, the legislature meant to exempt, under all circumstances, the property of the debtor, of the value of $100, from the claims and demands of his creditors. It would be, it seems to us, a narrow construction to declare an assignment for the benefit of creditors fraudulent and void merely because the debtor received from its op-

eration property which the law itself exempts from execution."

The question of the appealability of an order of the district court vacating an attachment is discussed in the brief of appellant's counsel, but is not mentioned by respondent. We hold that such an order is appealable. Section 5236, Comp. Laws, subd. 3, has been recently examined by the supreme court of South Dakota, and held to authorize the appeal. Bank v. Carroll, 44 N. W. Rep. 723; Couldren v. Caughey, 29 Wis. 320; Rice v. Jerenson, 54 Wis. 250, 11 N. W. Rep. 549. The order of the district court vacating the attachment is affirmed. All concur.